**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


PENSKE TRUCK LEASING, L.P.,

        Plaintiff,

v.                                                CIVIL NO. 05-70748
                                                  HON. LAWRENCE P. ZATKOFF


KINNIE-ANNEX CARTAGE CO., d/b/a
KINNIE-ANNEX TRUCK RENTAL AND LEASING,

        Defendant.

_____/



**<u>OPINION AND ORDER</u>**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 15, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE



**I.  INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment, and

Defendant's Motion for Summary Judgment, both  filed on December 21, 2005.  Both parties have

filed responses and replies.   The Court finds that the facts and legal arguments are adequately

presented in the parties' papers and the decision process would not be significantly aided by oral

argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART, and Defendant's Motion is DENIED.

## II. BACKGROUND

Plaintiff, Penske, is a truck leasing limited partnership registered in Delaware, with its principal place of business in Pennsylvania. Defendant, Kinnie-Annex Cartage d/b/a Kinnie-Annex Truck Rental and Leasing, is a Michigan corporation that supplies transportation services. Kinnie-Annex was founded by the Kinnie family in 1918, and is still run by the family. The three members of the Kinnie family principally involved with the instant suit are William R. Kinnie and his sons William A. Kinnie and Ronald Kinnie. William R. Kinnie is currently the owner of Kinnie-Annex, although half of his shares are being purchased by the wife and son of William A. Kinnie. William A. Kinnie Dep. at 30. William A. Kinnie's son manages the day-to-day operations of Kinnie-Annex. *Id.* at 43.

Ronald Kinnie manages Samba Express, a transportation company owned by his wife. Samba is located in the same building as Kinnie-Annex. Beginning in August 2002, Samba began doing business with Manuel Feliciano, who owned a transportation company called GLT. Samba would take over excess freight that GLT could not handle. Samba would invoice GLT for its services. By March 2003, GLT owed Samba receivables for unpaid invoices totaling $35,000. Ronald Kinnie Dep. at 27. At this time GLT began discussing a lease with Plaintiff. The lease was for transportation equipment, e.g. trucks and trailers. Feliciano discussed the proposed lease with Ronald Kinnie. Feliciano told Ronald Kinnie that more freight could potentially be outsourced to Samba. *Id.* at 33-35. Feliciano said that Plaintiff would not agree to the lease without a guarantor.

2

Feliciano also discussed the proposed lease with William A. Kinnie.

On March 10, 2003, Ronald signed a Guarantor Agreement, at the instruction of William A. Kinnie.  The Agreement contained the following provisions:

> In consideration of Penske Truck Leasing Co., L.P. (hereinafter called "Penske Truck Leasing") executing and entering into the annexed agreement dated the 10th day of March, 2003 with GLT Holland, Inc. (hereinafter called the "Customer") hereinafter called the "Lease", the undersigned hereby unconditionally and absolutely, jointly and severally, guarantees, promises and agrees to and with Penske Truck Leasing, its successors and assigns, that the Customer, its legal representatives, successors and assigns, will faithfully perform and fulfill all of the obligations, conditions and provisions of the Lease on its part to be performed or fulfilled at the time and in the manner therein provided, and will fully and promptly pay the sums therein stipulated and required to be paid by it.
>
> ***
>
> The undersigned further consent that their liability shall not be affected by any indulgence, promise, settlement, extension of credit, or variance, waiver or modification of any of the terms of the Lease, and this Guarantor Agreement shall apply equally and fully to any and all such modifications, extensions, amendments or variances without notice thereof or consent thereto by the undersigned.
>
> ***
>
> The undersigned individuals, if executing this instrument on behalf of a corporation, do hereby certify that they are duly authorized officers of such corporations; that they are executing this instrument pursuant to a resolution duly adopted at a meeting of the Board of Directors of the corporation or as a result of [their] authority as officers of such corporation; that the proceedings at the meeting were in compliance with the Charter and By-laws of the corporation and that the resolution has not been revoked, annulled or amended in any matter whatsoever, and that any consent or authorization of stockholders which may be required by law to the execution of this Guarantor Agreement has been obtained at a meeting duly held for such purpose in accordance with the Charter and By-laws of the corporation, and that such stockholder consent or authorization has not been revoked, annulled or amended in any manner.

Plaintiff's Motion, Exh. 2.  Kinnie-Annex Cartage Co. and Kinnie-Annex Truck Rental and Leasing, Inc., were listed as the guarantors.  Ronald Kinnie signed the Guarantor Agreement as an agent for

3

Kinnie-Annex.  Ralph Golinske, a Kinnie-Annex employee, witnessed the signature.

On March 28, 2003, Plaintiff entered into a Vehicle Lease Service Agreement ("VLSA"), with GLT.  Plaintiff then began leasing vehicles to GLT.  On November 10, 2003, Plaintiff exercised its right to terminate the VLSA, due to GLT's failure to pay invoices in accordance with their terms. Plaintiff alleges that GLT is liable for $267,656.20 for invoiced charges, and $321,158.74 for future lease charges and mileage charges that were guaranteed under the VLSA.  Plaintiff also alleges that GLT is liable for depreciation charges, interest, and attorney fees, pursuant to the VLSA.

After the termination of the VLSA, Plaintiff and GLT began settlement negotiations.  On December 18, 2003, Plaintiff and GLT signed a Settlement Agreement, which contained the following provision:

This Agreement is predicated and conditioned upon the following terms:

(a) GLT is to pay Penske either:

i.      The total sum of One Hundred and Ten Thousand ($110,000.00) dollars by January 20, 2004; OR

ii.     The total sum of One Hundred and Fifty Thousand ($150,000.00) dollars within six (6) months of the date of this Agreement, with the first Sixty Thousand ($60,000.00) dollars fully releasing Kinnie Annex Truck Rental and Leasing, Inc. and Kinnie Annex Cartage, Co. (collectively, "Kinnie") as original guarantors of the original truck and trailer leases.

Plaintiff's Motion, Exh. 5.  GLT subsequently failed to make any payments pursuant to the Settlement Agreement.  Plaintiff brought the instant suit on February 28, 2005, and filed a Motion for Partial Summary Judgment on December 21, 2005.  Plaintiff is seeking invoiced charges, guaranteed lease and mileage charges, interest, and attorney fees.  Plaintiff is not seeking compensation for depreciation in the instant motion.

4

### III.  LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted).  In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.  The non-moving party must do more than show that there is some metaphysical doubt as to the material facts.  It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment.  *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

### IV.  ANALYSIS

In its motion and response to Plaintiff's motion, Defendant raises five main arguments as to

why it should not be liable under the Guarantor agreement.

**A.      Ronald Kinnie's authority to execute the Guarantor Agreement**

Defendant argues that neither Ronald Kinnie nor William A. Kinnie had the authority to bind Kinnie-Annex.  Defendant alleges that William A. Kinnie has not been an officer or employee of Kinnie-Annex since 1990, and Ronald Kinnie has not been an officer or employee of Kinnie-Annex for at least ten years.  Defendant's Motion, Exh. F.

Plaintiff notes that Ronald Kinnie received a general power of attorney from Kinnie-Annex on December 20, 2002, that contained the following provisions:

> I, KINNIE-ANNEX CARTAGE, residing at 32097 HOLLINGSWORTH AVENUE, WARREN, Michigan 48092, hereby appoint RONALD G KINNIE of 32091 HOLLINGSWORTH AVENUE, WARREN, Michigan 48092, as my Attorney-in-Fact, to act in my name and place, and for my benefit on my behalf with authority to do the following:
>
> ***
>
> 2.  Enter into binding contracts on my behalf.

Plaintiff's Response to Defendant's Motion, Exh. 4.  The power of attorney was signed by William A. Kinnie, and notarized.  The notarization form stated that document was prepared by Kinnie-Annex Cartage, William A. Kinnie President.  *Id.*  Defendant argues that the power of attorney did not grant Ronald Kinnie the specific authority to execute the Guarantor Agreement that is the subject of the suit.  However, that argument is without merit.  The power of attorney unequivocally gave Ronald Kinnie the power to "enter into binding contracts" on Kinnie-Annex's behalf.  The document contains no limitations on this power.

Thus, the key issue is whether William A. Kinnie had the power to bind Kinnie-Annex. Ronald Kinnie possessed a general power of attorney, encompassing the document at issue, given

6

to him by William A. Kinnie on behalf of Kinnie-Annex.  If William A. Kinnie possessed the power

to bind Kinnie-Annex, Ronald Kinnie clearly did as well.

An agent may bind a principal through either actual or apparent authority.  *Meretta v. Peach*,

195 Mich. App. 695, 698 (1992).[1]  In this case there is a factual dispute over whether or not William

A. Kinnie possessed actual authority to bind Kinnie-Annex; Defendant argues that William A.

Kinnie was not an officer or employee of the company since 1990, and did not have the power to

bind it.  However, the Court need not address the issue of actual authority, since William A. Kinnie

clearly had apparent authority on behalf of Kinnie-Annex.

"Apparent authority may arise when acts and appearances lead a third person reasonably to

believe that an agency relationship exists."  *Id.*  Plaintiff notes that the 2001 and 2002 Profit

Corporation Information Updates filed for Kinnie-Annex with the state of Michigan were signed by

William A. Kinnie, as the president of Kinnie-Annex.  Plaintiff's Response to Defendant's Motion,

Exh. 6.  The act of naming an individual the president of a company would lead a reasonable person

to believe that an agency relationship exists between the individual and the company.

Plaintiff does not address the Information Updates in its Reply to Defendant.  Instead,

Plaintiff relies on the affidavit of William R. Kinnie, which states that neither Ronald nor William

A. had the authority to execute the Guarantor Agreement.  However, this self-serving statement does

not negate the weight of the Information Updates.  When a principal clothes an agent with an

appearance of authority, the principal is estopped from denying liability for acts that a reasonable

---

[1]The Guarantor Agreement contain a choice-of-law provision for Pennsylvania law.
However, the question of whether Ronald Kinnie possessed the authority to execute the
Agreement is a different issue from the interpretation of the Agreement, and will be decided
according to Michigan law.

7

person would interpret as within the scope of that authority. *See Moreschini v. Regional Broadcasters of Michigan, Inc.*, 373 Mich. 496, 498 (1964).

Typically, the issue of apparent authority is a question of fact for the jury. *Garey v. Kelvinator Corp.*, 279 Mich. 174, 190 (1937). However, in this case Defendant has failed to raise any issues of fact concerning the Information Updates for 2001 and 2002, identifying William A. Kinnie as the President of Kinnie-Annex, and the general power of attorney given to Ronald Kinnie in 2002 on behalf of Kinnie-Annex. Therefore, the Court finds as matter of law that Ronald Kinnie was authorized to execute the Guarantor Agreement.

**B.     Legal Effect of the Settlement Agreement Between Plaintiff and GLT**

Defendant argues that the Settlement Agreement between Plaintiff and GLT, executed in December 2003, acts as a novation that releases Defendant from liability. Initially, there is a question of whether Michigan or Pennsylvania law applies to the Settlement Agreement. The VLSA and Guarantor Agreement contained choice-of-law provisions specifying that Pennsylvania law would apply to the interpretation of those documents. However, the Settlement Agreement, which was executed in Michigan, contained no such provision.

A federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Michigan law requires the court "to balance the expectations of the parties to a contract with the interests of the states involved to determine which state's law to apply." *Equitable Life Assurance Soc'y of the United States v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998). In this case, the parties arguably expected Pennsylvania law to apply to the Settlement Agreement, since the underlying contract was governed by Pennsylvania law. Michigan also has an interest in the case, since the Settlement

8

Agreement was executed in Michigan and involved a Michigan party.  However, the Court need not

decide the issue,  because the result is the same under Michigan or Pennsylvania law.

　　　　1.　　Michigan Law

Michigan law requires four elements to establish a novation:

(1) parties capable of contracting;

(2) a valid prior obligation to be displaced;

(3) the consent of all the parties to the substitution based upon sufficient consideration;

(4) the extinction of the old obligation and the creation of a valid new one.

*Leila Hosp. & Health Center v. Xonics Medical Systems, Inc.*, 948 F.2d 271, 274 (6th Cir. 1991).

Defendant focuses on section 3(d) of the Settlement Agreement, which states "the VLSA

lease is hereby terminated, and this Agreement constitutes the only document governing the

relationship between the parties."  However, Plaintiff notes that prior to section 3(d), the Agreement

reads as follows:

This Agreement is predicated and conditioned upon the following terms:

(a) GLT is to pay Penske either:

　　i.　　The total sum of One Hundred and Ten Thousand ($110,000.00) dollars by January 20, 2004; OR

　　ii.　　The total sum of One Hundred and Fifty Thousand ($150,000.00) dollars within six (6) months of the date of this Agreement, with the first Sixty Thousand ($60,000.00) dollars fully releasing Kinnie Annex Truck Rental and Leasing, Inc. and Kinnie Annex Cartage, Co. (collectively, "Kinnie") as original guarantors of the original truck and trailer leases.

Plaintiff argues that because neither of these conditions was ever fulfilled, a fact which is not

disputed,  the Settlement Agreement never took affect, and cannot function as a novation.

9

The Court finds Plaintiff's argument persuasive.  In the seminal case *Henderson v. McRae*, 148 Mich. 324 (1907), the Michigan Supreme Court discussed the differences between two types of settlements:

> 1. Where the agreement of the creditor is to accept the performance of the debtor's new promise or agreement in satisfaction of the demand.
>
> 2. Where such promise or agreement itself, based upon sufficient consideration, is accepted in satisfaction of the demand.
>
> And in this class of cases it must clearly appear that the intention of the party was to accept such promise, and not the performance, in satisfaction of the original demand. In the first class of cases the accord must be fully executed to bar an action on the original demand. In the second class the original demand is extinguished, and cannot be the foundation of an action.

*Id.* at 327 (citations omitted).  For the instant Settlement Agreement to fall into the second category (a novation), it must clearly appear that Plaintiff intended to accept GLT's promise in exchange for the release of the VLSA.  However, the Agreement shows the exact opposite.  The "predicated and conditioned" language clearly shows that Plaintiff did not intend to automatically extinguish the VLSA.  Plaintiff did not agree to extinguish the VLSA in exchange for GLT's promise of performance; Plaintiff demanded actual performance.

Additionally, this clear language makes sense in light of the facts and circumstances of the case.  Plaintiff is alleging losses in excess of $500,000.  To avoid the cost and inconvenience of litigation, Plaintiff was willing to relinquish its claim for $110,000 or $150,000 (depending on the time of payment).  However, the actual payment was required.  If Plaintiff had to incur the cost and inconvenience of litigation to obtain the smaller amount specified in the Settlement Agreement, the purpose of the Agreement would be defeated.  As Plaintiff points out, it would make no sense to relinquish the right to sue for a large amount in exchange for the right to sue under a substantially

10

smaller amount.

Because the Settlement Agreement called for performance, and performance was not tendered, Plaintiff is not barred from suing on the VLSA and Guarantor Agreement.

Defendant also argues that its exposure is limited to $60,000, because it would be released for that amount under the Settlement Agreement. This argument is without merit, for the reasons discussed above. Defendant would only be released if the money was actually paid. Because it was not, Defendant is liable, pursuant to the Guarantor Agreement, for the full amount under the VLSA.

> 2.    *Pennsylvania Law*

An examination of Pennsylvania law yields the same result. Pennsylvania makes the same distinction between settlements that Michigan does: "In a novation, the new promise itself satisfies the preexisting claims, whereas in an accord it is the performance of the new promise that does so." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 148 (3d Cir. 1999). The party asserting a novation bears the burden of proof. *Id.* In the instant case, Defendant has presented no evidence indicating Plaintiff intended to accept a promise in exchange for a release of the VLSA. To the contrary, the evidence clearly shows that performance was required. Because performance was not tendered, Plaintiff is not barred from suing on the VLSA and Guarantor Agreement.

## C.    Annexation of the Guarantor Agreement

Defendant's argument on this point is not entirely clear, but appears to be that the VLSA was not attached to the Guarantor Agreement when it was signed by Ronald Kinnie. This argument is without merit. Ronald Kinnie's deposition indicates that both the VLSA and Guarantor Agreement were sent to him, and he looked over the VLSA before signing the Guarantor Agreement. Ronald Kinnie Dep. at 38-45.

11

**D.    Material Alteration of the VLSA**

Defendant argues that the terms of the VLSA were materially altered after the execution of the Guarantor Agreement, thus invalidating the Guarantor Agreement.  Both the VLSA and Guarantor Agreement stipulate that Pennsylvania law will govern their enforcement.  Michigan courts will enforce a contractual choice-of-law provision unless the chosen state has no substantial relation to the contract, or applying the choice-of-law provision would be contrary to the public policy of a state with a materially greater interest in the contract.  *Banek, Inc. v. Yogurt Ventures U.S.A.*, 6 F.3d 357, 361 (6th Cir. 1993).  Neither party has argued that either of those two exceptions applies.  Therefore, the court will apply Pennsylvania law to the VLSA and Guarantor Agreement.

Defendant argues that they were two material changes to the VLSA: amendments made between March 10, 2003, and March 28, 2003, and vehicles added to the VLSA.

*1.    Amendments Made Between March 10, 2003, and March 28, 2003.*

GLT signed the VLSA, and Ronald Kinnie signed the Guarantor Agreement, on March 10, 2003.  Plaintiff signed the VLSA on March 28, 2003.  The VLSA was amended between March 10 and March 28, and Defendant argues the amendments constitute material alterations that abrogate the Guarantor Agreement.

Pennsylvania law distinguishes between gratuitous and non-gratuitous sureties.  A gratuitous surety is discharged by a material modification in the underlying agreement, while a non-gratuitous surety is discharged by a material modification that substantially increases the surety's risk.  *J. F. Walker Co. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269, 1274 (Pa. Super. Ct. 2002).

Plaintiff argues that Defendant is a non-gratuitous surety.  Plaintiff notes that GLT was indebted to Samba Express, a company owned by Ronald Kinnie's wife, and run by Ronald Kinnie.

12

However, the Court need not decide the issue, since the amendments neither constitute a material modification nor substantially increase the surety's risk.

Under Pennsylvania law, a material modification is a "significant change in the principal debtor's obligation to the creditor that in essence substitutes an agreement substantially different from the original agreement on which the surety accepted liability." *Continental Bank v. Axler*, 510 A.2d 726. 729 (Pa. Super. Ct. 1986).  The amendments are listed in Exhibit B of Defendant's Response.  The first amendment gave GLT additional rights to terminate the VLSA.  The second amendment allowed for Kinnie-Annex to be released if GLT provided Plaintiff with certain letters of credit.  The third amendment dealt with the method of GLT's payment.  The fourth amendment stated that substitution was allowed for certain vehicles.

Plaintiff argues that none of these amendment materially altered the VLSA, and that one of them, the second, actually reduced Defendant's risk.  The Court agrees with this argument.  The second amendment clearly reduces Defendant's risk, by allowing its release from the Guarantor Agreement if certain letters of credit are provided.  The other amendments are clearly not material, since they do not create an agreement that is substantially different from the original.  This conclusion is supported by language of the Guarantor Agreement itself.  The Agreement states that:

> The undersigned further consent that their liability shall not be affected by any indulgence, promise, settlement, extension of credit, or variance, waiver or modification of any of the terms of the Lease, and this Guarantor Agreement shall apply equally and fully to any and all such modifications, extensions, amendments or variances without notice thereof or consent thereto by the undersigned.

Thus, the amendments made between March 10, 2003, and March 28, 2003 do not abrogate the Guarantor Agreement.

2.    *Addition of Vehicles*

Defendant argues that to the extent it did enter a Guarantor Agreement, it only intended to guarantee the lease of seven vehicles. William A. Kinnie stated that based on his conversations with Manuel Feliciano, the owner of GLT, he only intended for seven vehicles to be guaranteed. William A. Kinnie Dep. at 37-40. Defendant argues that "Plaintiff believes that once it gets a signature on the guaranty, it can advance anything and try to hold the purported guarantor liable."

However, the question is what the Guarantor Agreement and VLSA allowed. Pennsylvania follows the "four corners" rule, that is, "a clear and unambiguous written contract and the intent of the contracting parties must be determined from the four corners of the contract." *Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 300 (3d Cir. 2002). The Court will only look at extrinsic evidence to determine the intent of the parties if the contract is ambiguous. *Id.* There is nothing inherently invalid with an agreement guaranteeing the ongoing leasing of vehicles. *See J. F. Walker Co. v. Excalibur Oil Group, Inc.*, 792 A.2d at 1271 (guarantor agreement for the ongoing purchase of sundries allowed). Thus, the key issue is whether the Guarantor Agreement and VLSA clearly and unambiguously allowed for the addition of vehicles.

Plaintiff notes that the Guarantor Agreement stated that it would extend to all modifications of the VLSA. However, that clause alone does not suffice. There is a substantial difference between changing the payment terms, and adding an unlimited fleet of vehicles not contemplated by the original VLSA. Changing the VLSA to allow the addition of an unlimited number of vehicles would be a material change sufficient to release Defendant's liability. However, this would only be true if the original VLSA, in Ronald Kinnie's possession when he signed the Guarantor Agreement, did not allow for the addition of vehicles.

Plaintiff points to two sections of the original VLSA. The first section of the VLSA states

14

that GLT "agrees to lease from [Plaintiff] the vehicle(s) described in the Schedule(s) "A" (the "Vehicles") annexed to this Vehicle Lease Service Agreement ("VLSA") now or hereafter." Plaintiff argues that the "now or hereafter" language allows for the addition of vehicles. However, the Court is not persuaded that this language clearly allows for the addition of an unlimited number of vehicles. While the language could be read that way, it could also be read to indicate a fixed number of vehicles, determined at a later date, will be leased.

Plaintiff also points to Article 3 of the VLSA, which reads as follows:

3.  ADDITIONAL VEHICLES

At [GLT's] request, [Plaintiff] shall supply additional vehicles, other than as substitutions for inoperable Vehicles as specified in Article 2, for temporary use upon the terms set forth in this VLSA, to the extent it has sufficient vehicles of the size and type requested at the facility which services [GLT].

The Court agrees with Plaintiff that this section clearly allows for the leasing of additional vehicles. Furthermore, the heading, "ADDITIONAL VEHICLES," is readily noticeable, and located on the first page of the VLSA. Thus, the leasing of additional vehicles does not abrogate the Guarantor Agreement, because the original VLSA clearly allowed for the leasing of additional vehicles.

**E.    Damages**

Plaintiff has produced two spreadsheets detailing the amount of money owed to Plaintiff by GLT under the VLSA, and a declaration from Paul Weisner, a district manager of Plaintiff. Plaintiff's Motion, Exh. 3. The spreadsheets indicate Plaintiff is owed $267,656.20 for invoiced charges, and $321,158.74 for guaranteed lease and mileage charges.

Defendant argues Weisner does not have personal knowledge of the damages claimed. Defendant also argues that $42,675 should have been paid by insurance. The Court agrees that there is currently insufficient evidence to determine damages. The Court will schedule a hearing to hear

15

evidence on the issue of damages.

## V.  CONCLUSION

For the above reasons, Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART.  The Court finds that, pursuant to the Guarantor Agreement, Defendant is liable for the amounts GLT owes Plaintiff under the VLSA.  The Court will schedule a hearing on the issue of damages.  Defendant's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  March 15, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 15, 2006.

s/Marie E. Verlinde
Case Manager
(810) 984-3290

16